## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| REILLY TYLER RAMSEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Case No. 4:25-cv-3019 |
| | ) | |
| MONTGOMERY COUNTY, TEXAS; | ) | |
| DEPUTY JOSEPH O'NEILL; DEPUTY | ) | |
| JUSTIN PIERCE; DEPUTY RYAN | ) | |
| GRAVES; AND SERGEANT JOSHUA | ) | |
| HILADO | ) | |
| | ) | |
| *Defendants* | ) | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

COMES NOW, Reilly Tyler Ramsey ("Plaintiff"), by and through her counsel of record, and files this Original Complaint and respectfully comes before this Honorable Court pursuant to 42 U.S.C. 1983, *et seq.* complaining of Defendants Deputy Joseph O'Neill, Deputy Justin Pierce, Deputy Ryan Graves, Sergeant Joshua Hilado, and their employer Montgomery County, Texas of violating her Constitutional rights to remain free from excessive force when she was grabbed, jerked, and slammed face-first onto a brick road and the wheel and tire of a parked vehicle. The Defendants acted under color of state law through the Montgomery County Sheriff's Office and Montgomery County, Texas and deprived the Plaintiff of her right to be free from excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The Plaintiff specifically alleges and would show unto this Honorable Court the following:

### I. PARTIES

1. Plaintiff Reilly Tyler Ramsey is an individual who resides in Montgomery County, Texas and may be reached by and through her counsel of record: Luis Baez, 310 Main St., Ste. 201, Houston, Texas.

2. Defendant DEPUTY JOSEPH O'NEILL is a resident and citizen of the State of Texas, a licensed peace officer employed by the Montgomery County Sheriff's Office and Montgomery County, Texas and the final policymaker for purposes of this suit under *Monell* liability, theories of ratification, *etc.*, and may be served with process at the Montgomery County Sheriff's Office, 1 Criminal Justice Dr, Conroe, TX 77301, or wherever he may be found.

3. Defendant DEPUTY JUSTIN PIERCE is a resident and citizen of the State of Texas, a licensed peace officer employed by the Montgomery County Sheriff's Office and Montgomery County, Texas and the final policymaker for purposes of this suit under *Monell* liability, theories of

1

ratification, *etc.*, and may be served with process at the Montgomery County Sheriff's Office, 1 Criminal Justice Dr, Conroe, TX 77301, or wherever he may be found.

4.  Defendant DEPUTY RYAN GRAVES is a resident and citizen of the State of Texas, a licensed peace officer employed by the Montgomery County Sheriff's Office and Montgomery County, Texas and the final policymaker for purposes of this suit under *Monell* liability, theories of ratification, *etc.*, and may be served with process at the Montgomery County Sheriff's Office, 1 Criminal Justice Dr, Conroe, TX 77301, or wherever he may be found.

5.  Defendant SERGEANT JOSHUA HILADO is a resident and citizen of the State of Texas, a licensed peace officer employed by the Montgomery County Sheriff's Office and Montgomery County, Texas and the final policymaker for purposes of this suit under *Monell* liability, theories of ratification, *etc.*, and may be served with process at the Montgomery County Sheriff's Office, 1 Criminal Justice Dr, Conroe, TX 77301, or wherever he may be found.

6.  Defendant MONTGOMERY COUNTY, TEXAS ("MCTX") is a duly-organized municipality in the State of Texas (Montgomery County, Texas), a governmental unit of the State of Texas, is sued herein for municipal/entity liability under *Monell* and may be served with process by serving the Montgomery County Judge, Honorable Mark J. Keough at the Alan B. Sadler Commisioners' Court building, 501 North Thompson, Fourth Floor, Suite 401, Conroe, Texas 77301 or wherever he may be found.

## II. JURISDICTION AND VENUE

7.  This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 1343(a)(3) and (4) because the Plaintiff's suit arises under 42 U.S.C. 1983.

8.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1342, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

9.  Plaintiff brings this action to redress the unlawful and flagrant excessive force against Plaintiff pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution made applicable to all Defendants because of the federal due process violations explained further below. In addition, Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367(a), to hear and decide claims arising under Texas state law.

10. Venue is proper in the State of Texas and this District court pursuant to 28 U.S.C. §1391(b) because Defendants reside or resided in the State of Texas and this District during the relevant time period and all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas.

11. All conditions precedent have been performed or have occurred.

### III. BACKGROUND AND FACTS APPLICABLE TO ALL COUNTS

12. Plaintiff hereby respectfully refers to, an incorporates, the facts and allegations explained and stated hereinabove as is fully set forth herein.

13. Plaintiff is and was, during all relevant times hereto, a citizen of the United States of America.

14. Defendant MCTX and its "DEFENDANT OFFICERS" (defined as listed above as DEPUTY JOSEPH O'NEILL; DEPUTY JUSTIN PIERCE; DEPUTY RYAN GRAVES; and SERGEANT JOSHUA HILADO), at all times relevant hereto, were employed by and acting on behalf of Defendant MCTX, as licensed peace officers with the Montgomery County Sheriff's Office. In addition, DEFENDANT OFFICERS' conduct, actions, and/or inactions, individually and in concert with others, includes their conduct, actions, and/or inactions under: Aiding & Abetting; Assisting & Participating; Concert of Action; Actual Authority; and Ratification.

15. DEFENDANT OFFICERS worked together in joint cooperation and concert of action. With the cooperation, protection, and encouragement of DEFENDANT OFFICERS and MCTX, DEFENDANTS—each of them individually, jointly, and/or collectively operated through the authority of the law. At all times material to this Complaint, DEFENDANTS were acting under color of state law, ordinances and/or regulations, statutes, customs, and usages of Defendant MCTX and Montgomery County Sheriff's Office.

16. In addition, the DEFENDANTS' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally violative injuries and damages suffered by Plaintiff, as set forth more fully below.

17. DEFENDANTS deprived Plaintiff of rights, privileges, and immunities secured by the United States Constitution. This deprivation included depriving Plaintiff of her right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution as well as their right to be free from unreasonable use of force. This deprivation also included depriving Plaintiff's guarantee of equal protection by the law prescribed in the Fourteenth Amendment of the United States Constitution. The particulars of these deprivations are described more fully in the following paragraphs.

18. On Friday, June 30th, 2023 around 10:10PM, DEPUTY JOSEPH O'NEILL— employed and acting under the color of state law through the Montgomery County Sheriff's Office—was flagged down by a male sitting in the driver's seat of a truck parked at 14 Waterway Ave., The Woodlands, Montgomery County, Texas 77380.

19. DEPUTY JOSEPH O'NEILL turned his patrol vehicle around and parked behind the truck. The male who flagged the officer down—Connor Koy ("Koy")—exited the truck and approached the Deputy's vehicle on foot. Koy explained to Deputy O'Neill that Plaintiff—a 25-year-old, 100-

pound female—who was sitting in the passenger seat of the vehicle at the time—was "suicidal." Koy asked the DEPUTY O'NEILL to talk with Plaintiff to make sure she was safe.

20. The doors to the vehicle were locked. Plaintiff—who was clearly and obviously in need of properly trained Deputies with MCSO's "Crisis Intervention Team"—did not unlock the doors.[1] Instead of

communicating to see if MCSO could dispatch officers with the Crisis Intervention Team to address the situation, DEPUTY O'NEILL stood next to the passenger side and door and repeatedly yelled at Plaintiff to "open the door" while banging on the window with a closed fist.

21. Despite Koy mentioning that he had a spare key "ten minutes" away from the scene, DEPUTY O'NEILL told Plaintiff that he "did not want to bust [the] window out." Shortly after, several other Deputies with MCSO arrived. DEPUTY JUSTIN PIERCE told Plaintiff that if she did not open the door, Deputies would "drag [her] out and take her to jail" and added that "the longer we are here the worse it's gonna get for you."

22. Approximately ten minutes later, and having conferred with SERGEANT JOSHUA HILADO, DEPUTY O'NEILL broke the window to the driver's side door and unlocked the doors. When the doors were unlocked, DEPUTY JUSTIN PIERCE and DEPUTY RYAN GRAVES were able to open the passenger side door.

23. When they did, they immediately, forcefully, and without warning grabbed Plaintiff by the arm, unbuckled her seatbelt, and threw her out of the vehicle onto a brick road and the wheel and tire of a vehicle parked nearby. They then proceeded to each put their knees on her back while placing her in handcuffs. DEPUTY JUSTIN PIERCE then advised assisting Deputies to "just drag her" to a patrol car.

24. In an "arrest report" describing the injuries, DEPUTY O'NEILL only listed "a scrape to [Plaintiff's] chin" as a noted injury of Plaintiff. Photos taken shortly after of Plaintiff's face, wrists, and mouth however, were much more significant (as evidenced in part by the Exhibits beginning on the following page).

---

[1]    On a public webpage for the Montgomery County Sheriff's Office, the Crisis Intervention Team is described as "a community-based partnership working with mental health consumers, family members, and mental health professionals in responding to individuals in a mental health crisis" that can provide "[s]pecially trained officers to respond to crisis calls" (available at https://www.mctxsheriff.org/divisions/administrative_services_division/cit.php).

Exhibit 1



**Exhibit 2**



**Exhibit 3**



Exhibit 4



25. As a result of the arrest, Plaintiff was charged with two separate criminal charges: Class C Public Intoxication and Class A Resisting Arrest, Search, or Transport. Both charges were dismissed by Assistant District Attorneys with the Montgomery County District Attorney's Office.

26. All of these actions, inactions, omissions, and conduct by the DEFENDANT OFFICERS are attributable to Montgomery County, Texas because of its ratification of the behavior.

## IV. 42 U.S.C. § 1983 CLAIMS/CAUSES OF ACTION/COUNTS – APPLICABLE TO ALL COUNTS HEREIN

27. Plaintiff re-alleges all of the allegations in the previous paragraphs 1—26, as though fully set forth herein, to support Plaintiff's elements, claims, causes of action, and counts

28. Pursuant to 42 USC § 1983, DEFENDANTS, "under color of state law," "subject[ed] or cause[d] to be subject[ed Plaintiff], a "citizen of the United States," the deprivation of [his] "rights, privileges, or immunities secured by the Constitution and laws," [and] "[should be held liable] to [Plaintiff] in an action at law, suit in equity, or other proper proceeding for redress."

29. Plaintiff invokes her Constitutional rights, under the 1st, 4th, and 14th Amendments to the United States Constitution – to wit:

   a. Right to be Free from Excessive Force;
   b. Failure to Intervene;
   c. Right to be Free from Cruel and Unusual Punishment; and
   d. Substantive Due Process Rights (Life, Liberty, and Property)

7

30. At all times relevant to this incident, after Plaintiff was detained; Plaintiff was not a threat to herself or others.

31. At all times relevant to this incident, DEFENDANT OFFICERS were duly appointed police officer for MCTX and MONTGOMERY COUNTY SHERIFF'S OFFICE.

32. At all times relevant to this incident, DEFENDANTS were acting "under color of state law." That is, DEFENDANT OFFICERS were (i) on duty, (ii) in uniform, (iii) were using departmental issued and approved equipment, (iv) departmental policies/procedures/customs permitted, prohibited, and/or was unconstitutionally silent on their actions and/or inactions, and MCTX approved its DEFENDANT OFFICERS' actions and/or inactions.

33. At all times relevant to this incident, Plaintiff's rights under the 1st, 4th, and 14th Amendment rights/claims arose when Plaintiff was "seized" – that is:

    a. when DEFENDANT OFFICERS terminated Plaintiffs' freedom of movement through a means intentionally applied;[2]
    b. when Plaintiff, a reasonable person, believed she was not free to leave;[3]
    c. when DEFENDANT OFFICERS purposely detained or arrested Plaintiff but used more force than intended/necessary;[4]
    d. when DEFENDANT OFFICERS purposely detained or arrested Plaintiff but used more force than intended/necessary for the detention or arrest.

34. Plaintiff's rights under the 14th Amendment further arose when DEFENDANTS created a dangerous situation when it used excessive force, escalated the situation, and failed and/or refused to protect Plaintiff; and, when DEFENDANTS restrained Plaintiff's personal liberty and subsequently failed and/or refused to protect Plaintiff despite reasonable alternative methods to address the specific situation at hand.

35. At all times relevant to this incident, DEFENDANTS' use of force was Constitutionally violative because Plaintiff's arrest was unlawful and excessive force was used."[5]

36. At all times relevant to this incident, MCTX and DEFENDANT OFFICERS deprived Plaintiff of her right to be free from excessive force—a right secured by the US Constitution. DEFENDANTS' failure to intervene and stop the excessive force further violated this right. DEFENDANTS' lack of training on use of force and excessive force further violated this right. DEFENDANTS' failure to supervise and their lack of enforcement of their written audio/visual-

---

[2]     *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989).
[3]     *Breadline v. California*, 551 U.S. 249, 255 (2007).
[4]     *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th Cir. 1998).
[5]     *Ramirez v. Martinez*, 716 F.3d 369, 376-377 (5th Cir. Tex. 2013) (holding that an officer's force is justified to effectuate an arrest so long as the arrest is lawful and excessive force is not used.).

recording policy further violated this right by allowing the conduct of excessive force to go on with impunity and ignorance to same. DEFENDANTS' policy during the incident and/or absence of official policy, in the face of clearly known Constitutional law and known violations, inflicted a deprivation of Plaintiff's Constitutional rights. DEFENDANTS' policy and absence of policy, also established through ratification, inflicted a deprivation of Plaintiff's Constitutional rights. DEFENDANTS disregarded a known consequence of risk of serious bodily injury could occur due to their lack of training; vague, ambiguous, and non-specific definitions of use of force; with no written policy on excessive force; and no supervising the use of force through failure in their policy to adhere to audio/visual recording policy inflicted a deprivation of Plaintiff's Constitutional rights. These described actions and inactions amounted to DEFENDANTS' deliberate indifference and were the "moving force" behind the Constitutional violation alleged herein.

37. Municipal liability is also alleged herein based on MCTX's failure to train and supervise, which failure to train was a deliberate indifference to Plaintiff's rights. Here, MCTX failed to train its employees with respect to a clear Constitutional duty/duties that arises in situations that its employees are certain to face including handling individuals with mental health crises. MCTX failed to train its employees with respect to a clear Constitutional duty/duties that arise where the need for training is not obvious at the outset, but a pattern of violations put MCTX on notice of the need to train. MCTX had knowledge of the potential for Constitutional violations and either authorized, condoned, approved, or assisted in the violation of Plaintiff's Constitutional rights. What's more, MCTX and its policymakers "implicitly or explicitly adopted and implemented" the above-described careless and reckless policies or had actual or constructive knowledge of such policies.

38. At all times relevant to this incident, the MCTX and DEFENDANT OFFICERS proceeded with conscious and deliberate indifference to the safety and welfare of Plaintiff.

39. At all times relevant to this incident, DEFENDANT OFFICERS' conduct was "plainly incompetent" and/or was a "knowing violation of the law."

40. At all times relevant to this incident, MCTX and DEFENDANT OFFICERS engaged in the conduct complained of herein, which conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

41. Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

## V. CAUSES OF ACTION — COUNT 1: 42 U.S.C. 1983 EXCESSIVE FORCE (AS TO ALL DEFENDANTS)

42. Plaintiff re-alleges all of the allegations in the previous paragraphs 1—41, as though fully set forth herein, to support Plaintiff's elements, claims, causes of action, and counts.

9

43. During all relevant time periods complained of herein, the DEFENDANT OFFICERS complained of were acting under color of state law because; there was no crime committed by

Plaintiff; Plaintiff did not pose a threat to herself or others; there was no probable cause to arrest Plaintiff; there was no arrest warrant pursued and issued against Plaintiff pursuant to the Texas Code of Criminal Procedure; there was no active resisting of arrest or attempting to evade arrest by flight or even interference with public duties; DEFENDANT OFFICERS arrested and jailed the Plaintiff but did not do so pursuant to the Texas Code of Criminal Procedure; and DEFENDANT OFFICERS took certain actions to encourage the Montgomery County District Attorney to accept or otherwise maintain criminal charges against Plaintiff. But for their status as peace officers, DEFENDANT OFFICERS would not have been able to perpetrate the wrongs complained of in this Complaint.

44. Carefully balancing of the nature and quality of the intrusion on Plaintiff's 4th Amendment interest against the countervailing governmental interest at stake, DEFENDANT OFFICERS used excessive force against Plaintiffs, pursuant to *Graham v. Connor*, 490 U.S. 386, 395-96 (1989), that was unnecessary in light of the circumstances – to wit:

    a. when they went hands-on with Plaintiffs when Plaintiff was engaged in a lawful, Constitutionally-protected act;
    b. when they flung and slammed Plaintiff's body onto a brick road;
    c. when they flung and slammed Plaintiff's face onto a brick road and wheel and tire of a vehicle parked nearby; and
    d. when DEFENDANT OFFICERS drug and threw her into the backseat of a patrol vehicle.

45. DEFENDANT OFFICERS' use of force was objectively unreasonable in light of the totality of the circumstances confronting the DEFENDANT OFFICERS, without regard to the DEFENDANT OFFICERS' underlying intent or motivation.[6] *Graham* at 397. Specifically, Defendant OFFICERS:

    a. knew that Plaintiff did not present a danger to herself or others;
    b. affirmatively chose to use force that caused unnecessary injury to Plaintiff; and
    c. used force that was excessive to the need.

46. Plaintiff's Constitutional right to remain free from excessive force was:

    a. secured to them by the Fourth and Fourteenth Amendments to the United States Constitution;
    b. violated by Defendant OFFICERS;
    c. clearly established within both the Fifth Circuit and the Southern District of Texas at all times relevant hereto; and

---

[6] An officer's intent or subjective motivations may be considered by a fact-finder when evaluating the credibility of his testimony. Graham at 399.

e. Plaintiff suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively unreasonable" when DEFENDANT OFFICERS used excessive force against her, as described above.

47. At all times relevant hereto, any reasonable police officer would have known:

   a. law enforcement officers must only use force that is justified by a need;
   b. the use of force by a law enforcement officer must be objectively reasonable in light of the circumstances;
   c. Plaintiff had a clearly established right to remain free from an unreasonable use of force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and
   d. the quantum of force used by DEFENDANT OFFICERS against Plaintiff was excessive to the need; is impermissible during any detention; was a clear violation of Plaintiff's Constitutional rights; and was conduct unbecoming of a police officer.

48. Here, Defendant OFFICERS' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

49. Here, MCTX, through the Montgomery County Sheriff's Office, has *Monell* liability for its Constitutionally deficient policy; its Constitutionally deficient practice, custom, and usage; its supervisory responsibility failures over DEFENDANT OFFICERS; its ratification of Defendant DETECTIVE OFFICERS' decision, actions, and the basis for his decisions and actions; and for failure to train and supervise, as set forth below. DEFENDANT MCTX's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

50. Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

51. Additionally, Plaintiff seeks punitive damages against DEFENDANT OFFICERS because they:

   a. acted with conscious indifference to the possibility that they would unnecessarily injure Plaintiff under the circumstances;
   b. acted with reckless or callous indifference to Plaintiff's federally protected rights;
   c. acted with deliberate indifference to the likelihood that they would violate Plaintiff's Constitutional rights by using excessive force that was unjustified by the need;
   d. recklessly trampled on Plaintiff's clearly established Constitutional rights through plainly unlawful conduct;
   e. acted in a grossly negligent manner;
   f. knew Plaintiff did not present a danger to herself or other persons in the immediate vicinity;

g. acted with conscious indifference to Plaintiff's rights when they utilized force in excess of any need at the time of such arrest;

h. acted with conscious indifference to Plaintiff's rights when they used force that caused serious injuries to Plaintiff; and/or

i. recklessly trampled on Plaintiff's clearly established Constitutional rights through plainly unlawful conduct.

## VI. CAUSES OF ACTION — COUNT 4: 42 U.S.C. 1983 FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE[7] (AS TO MCTX)

52. Plaintiff re-alleges all of the allegations in the previous paragraphs 1—51, as though fully set forth herein, to support Plaintiff's elements, claims, causes of action, and counts.

53. DEFENDANT MCTX failed to train, supervise, and discipline its employees amounting to a deliberate indifference to the Plaintiff's Constitutional rights. *City of Canton, Ohio v. Galveston*, 489 U.S. 378 (1989). Deficient employment decisions regarding training, supervision, and discipline can subject a governmental entity to §1983 liability. *See Brown*, 520 U.S. 397 (1997); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1417 (5th Cir. 1996).

54. At all times relevant, DEFENDANT MCTX had a duty to train, supervise, and discipline their employees and agents, and DEFENDANT MCTX breached those duties.

55. Defendant MCTX breached those duties, in part, by:

a. improperly training, authorizing, encouraging, or directing DEFENDANT OFFICERS: (i) on proper protections and investigative methods when dealing with an individual dealing with a mental health episode and deployment of the Crisis Intervention Team (ii) on proper search and seizure; (iii) on proper arrest and to protect against false arrest; (iv) on proper use of force; (v) on proper intervening; and (vi) on proper policies, practices, customs, and usages to secure and not infringe on Constitutional rights;

b. improperly supervising DEFENDANT OFFICERS: (i) on proper protections and investigative methods when dealing with an individual dealing with a mental health episode and deployment of the Crisis Intervention Team (ii) on proper search and seizure; (iii) on proper arrest and to protect against false arrest; (iv) on proper use of force; (v) on proper intervening; and (vi) on proper policies, practices, customs, and usages to secure and not infringe on Constitutional rights;

c. improperly disciplining DEFENDANT OFFICERS: (i) on proper protections and investigative methods when dealing with an individual dealing with a mental health episode and deployment of the Crisis Intervention Team (ii) on proper search and seizure; (iii) on proper arrest and to protect against false arrest; (iv) on proper use of force; (v) on proper

---

[7]     An unconstitutional custom or policy may also be shown by evidence of deficient or inadequate training, supervision, or hiring of law enforcement officers by municipal officials. *City of Canton v. Galveston*, 489 U.S. 378 (1989); *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997); *Wellington v. Daniels*, 717 F.2d 932 (4th Cir. 1983).

intervening and (v) our proper policies, practices, customs, and usages are secure and not infringe on Constitutional rights;

    d.   failing to investigate allegations of: disregarding proper protections and investigative methods when dealing with an individual dealing with a mental health episode and deployment of the Crisis Intervention Team, improper search and seizure; false arrests;

excessive force; failure to intervene; and unconstitutional polices, practices, customs, and usages.

56. Plaintiff has shown (1) MCTX's training procedures were inadequate; (2) MCTX's policymakers were deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused Plaintiff's injuries and damages. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). Second, even if MCTX's training program does prevent Constitutional violations, MCTX is still liable because its policymakers were put on notice that a new program was called for. *Bd. of the County Comm'rs v. Brown*, 520 U.S. at 407-408 (stating that a "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'— necessary to trigger municipal liability.") (citing *Canton v. Galveston*, 489 U.S. 378, 390 n. 10 (1989). Third, the U.S. Supreme Court in *Brown* also stated that it did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a governmental entity has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger entity liability, which is the case here. *Id.* at 409 (citing *Canton v. Galveston*, 489 U.S. at 390, and n. 10 (stating that it "may happen that in light of the duties assigned to specific officer or employees the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need")). Here, for example, DEFENDANT OFFICERS' actions were uniform, consistent, in collaboration with one another, and were ratified by all involved.

57. *Inter alia*, MCTX's lack of training, supervision, and discipline on use of force and excessive force and on proper protections and investigative methods when dealing with an individual dealing with a mental health episode and deployment of the Crisis Intervention Team deprived Plaintiff of her clearly established rights secured by the US Constitution, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of his Constitutional rights, the injuries, and damages.

58. Defendant MCTX's failure to supervise and their lack of training and lack of enforcement of their proper protections and investigative methods when dealing with an individual dealing with a mental health episode and deployment of the Crisis Intervention Team policy deprived Plaintiff of her clearly established Constitutional rights by allowing the use of force and excessive force to go with impunity and ignorance to same, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of his Constitutional rights, the injuries, and damages.

59. What's more, Defendant MCTX, a municipal actor, disregarded a known or obvious consequence of its action to not implement a proper policy on proper protections and investigative methods when dealing with an individual dealing with a mental health episode and deployment of the Crisis

intervention team, which violation would deprive one of his constitutional search and seizure, arrest, excessive force, and ratification.

60. DEFENDANT MCTX was on actual or constructive notice of the need for training, supervision, and discipline because of a pattern of similar unconstitutional acts by its OFFICER occurred within a relevant period of time before the incident

61. DEFENDANT MCTX acted in conscious disregard of the Constitutional rights of its residents – namely, Plaintiff – by failing to train, supervise, and discipline its DEFENDANT OFFICERS.

62. the unconstitutional consequences of failing to train are and were so patently obvious to DEFENDANT MCTX that it is liable under § 1983 without proof of a pre-existing pattern of violations.

63. Defendant MCTX failure to adequately train, supervise, and discipline DEFENDANT OFFICERS amounted to deliberate indifference to Plaintiff's rights under the United States Constitution.

64. Defendant MCTX'S ratification and/or concealment of DEFENDANT OFFICERS' actions or omissions amounted to deliberate indifference to Plaintiff's rights under the United States Constitution.

65. This policy is tacitly or overtly sanctioned, as evidenced by the conduct of MCTX failure to train, supervise, investigate, and discipline any of the DEFENDANT OFFICERS involved in this incident amounting to deliberate indifference to Plaintiff's Constitutional rights.

66. *Monell* liability can be imputed to DEFENDANT MCTX because there was a failure to train the DEFENDANT OFFICERS in this case in the continuum of using force, making arrests based upon probable cause, and on proper protections and investigative methods when dealing with an individual dealing with a mental health episode and deployment of the Crisis Intervention Team. In the present case, there is a pattern of this sort of conduct evidenced by the extremity with which the situation became extreme and the DEFENDANT OFFICERS were multiple police units to the scene without consideration of mental health considerations. Plaintiff prevails on any question of law concerning whether *Monell* liability can be imputed to the city for one Constitutional violation. *Brown v. Bryan County*, OK, 219 F.3d 450 (5th Cir. 2000).

67. DEFENDANT MCTX'S actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

68. Plaintiffs seek unliquidated damages within the jurisdictional limitations of this court.

14

## VII. CAUSES OF ACTION — COUNT 5: 42 U.S.C. 1983 VIOLATION OF DUE PROCESS (AS TO ALL DEFENDANTS)

69. Plaintiff re-alleges all of the allegations in the previous paragraphs 1—68, as though fully set forth herein, to support Plaintiff's elements, claims, causes of action, and counts.

70. Plaintiff's Constitutional right to due process as a free citizen was:

    a.  secured to her by the Fourteenth Amendment to the United States Constitution
    b.  violated by DEFENDANTS at the scene of the incident, and by Defendant; and
    c.  clearly established within both the Fifth Circuit and the Southern District of Texas

71. On June 30th, 2023, DEFENDANTS violated Plaintiffs' Fourteenth Amendment right to Due Process when they:

    a.  used unnecessarily excessive force;
    b.  caused serious injuries to Plaintiff;
    c.  used excessive force without furthering any legitimate penological interest;
    d.  used said excessive force in bad faith, maliciously, and recklessly; and
    e.  by using excessive force that was objectively unreasonable under the circumstances.

72. DEFENDANTS' conduct was:

    a.  deliberate and purposeful;
    b.  was plainly incompetent;
    c.  a knowing violation of the law;
    d.  predicated upon the patently unreasonable belief that the conduct herein was reasonable
    e.  an intentional violation of the law;
    f.  consciously and deliberately indifferent to Plaintiff's Constitutional rights and safety;
    g.  performed while knowingly disregarding the obvious risk that the above actions would designedly result in his inability to comply with any officer's verbal commands or physical forces;
    h.  a significant threat to Plaintiff's clearly established Constitutional right to remain free from Due Process violations and excessive force; and
    i.  evidences unreasonable misunderstandings of their respective powers and responsibilities.

73. No reasonable officer could ever believe that Plaintiff's conduct herein warranted the reckless, malicious, bad faith, and deliberately indifferent abuse perpetrated by DEFENDANTS herein.

74. Plaintiff seeks punitive damages against DEFENDANTS because they:

a. ~~they lacked Constitutional authority to treat Plaintiff the way they did under the~~ circumstances herein;

b. acted with conscious indifference to the possibility that they were performing unreasonably unlawful acts;

c. acted with reckless or callous indifference to Plaintiff's federally protected rights;

d. recklessly violated Plaintiff's clearly established Constitutional rights to remain free from Due Process violations; and

e. acted in a grossly negligent manner.

75. Defendant MCTX and its DEFENDANT OFFICERS, used excessive force against Plaintiff–to wit:

a. when they went hands-on with Plaintiff when Plaintiffs were engaged in a lawful, Constitutionally-protected act;

b. when they flung and slammed Plaintiff's body onto a brick road;

c. when they flung and slammed Plaintiff's face onto a brick road and wheel and tire of a vehicle parked nearby; and

d. when DEFENDANT OFFICERS drug and threw her into the backseat of a patrol vehicle.

76. Defendant MCTX and its DEFENDANT OFFICERS conduct was a "deliberate decision to deprive a person of life, liberty, or property."

77. Defendant MCTX and its DEFENDANT OFFICERS, actions "can properly be characterized as conscience shocking, in a Constitutional sense"[8] and/or was recklessness, gross negligence, or deliberate indifference to the rights of Plaintiff.

78. Plaintiff suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively unreasonable" when DEFENDANT OFFICERS used excessive force against Plaintiff, as described above.

79. DEFENDANT MCTX implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices. These included, among other things, allowing its DEFENDANT OFFICERS, to unconstitutionally and excessively use force in violation of the United States Constitution.

80. DEFENDANT MCTX failure to adequately train, supervise, and discipline DEFENDANT OFFICERS amounted to deliberate indifference to Plaintiff's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

---

[8]  Conduct that "shocks the conscience" is the type that violates the "decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 172-73 (1952). It is also conduct that is so brutal and offensive that it does not comport with "traditional ideas of fair play and decency." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "shock the conscience" standard is found "at the ends of the tort law's spectrum of culpability." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). As a result, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to give rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

81. Defendant MCTX's ratification and/or concealment of DEFENDANT OFFICER' actions or omissions amounted to deliberate indifference to Plaintiff's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

82. What's more, DEFENDANT MCTX's continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees establishes the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 407 (U.S. 1997).

83. DEFENDANT OFFICERS' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

84. Plaintiffs seek unliquidated damages within the jurisdictional limitations of this court.

## VIII. JURY DEMAND

85. Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with FEDERAL RULE OF CIVIL PROCEDURE 38, a trial by jury on all issues.

## IX. DAMAGES

86. As a result of the actions and circumstances described above, Plaintiff has suffered injuries and damages including but not limited to one or more of the following:
   a. Nominal Damages.
   b. Actual Damages.
   c. Compensatory Damages.
   d. Past and future physical injuries, impairment, inconvenience, and disfigurement;
   e. Past and future pain and suffering;
   f. Past and future mental anguish, emotional distress, anger, and humiliation;
   g. Past and future economic losses and loss of earning capacity;
   h. Past and future medical expenses
   i. Presumed Damages;
   j. Attorney's Fees, pursuant to 42 U.S.C. §§ 1983, 1988, *et seq.*;
   k. Expert Fees, pursuant to 42 U.S.C. §§ 1983, 1988, *et seq.*;
   l. Punitive Damages;
   m. Unliquidated damages within the jurisdictional limits of this court; and
   n. Pre-judgment and post-judgment interest.

## X. ATTORNEY'S FEES

94. Plaintiff is entitled to recover attorneys' fees and costs under 42 U.S.C. §§ 1988 and 1988.

Case 4:25-cv-02019   Document 1   Filed on 06/29/25 in TXSD   Page 18 of 18

## XI. PRAYER FOR RELIEF

95.     For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against DEFENDANTS consistent with the relief requested herein and award the Plaintiff damages and punitive damages in an amount to be determined by Plaintiff's jury, along with costs of this action

including reasonable attorney fees, and for any and all other relief, at law or in equity, to which Plaintiff may show herself justly entitled.

Dated: June 29th, 2025

Respectfully submitted,

*/s/ Luis Baez*
**LUIS BAEZ**
HOUSTON CRIMINAL DEFENSE
ATTORNEYS, PLLC
State of Texas Bar No. 24086192
Federal Bar No. 2582426
310 MAIN ST., STE 201
Houston, Texas 77002
Phone: 713-304-9166
luisb@houstoncriminaldefenseattorneyspllc.com
**ATTORNEY FOR PLAINTIFF**